# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA KATE LYON, | Case No. 1:16-cv-01634-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 14, 15, 16) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Sylvia Kate Lyon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from bipolar disorder with psychotic features, anti-social personality disorder, diabetes, hypertension, back pain, and leg pain.[2] For the reasons set forth below, the Court Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

[2] Plaintiff does not challenge the ALJ's findings that her physical impairments do not restrict her ability to work, so the Court does not discuss them in this decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title XVI application for supplemental security income on August 31, 2011, alleging disability beginning on August 18, 2010. (AR 184-192.) Plaintiff's application was initially denied on October 21, 2011, and denied upon reconsideration on November 27, 2013. (AR 116-119, 124-130.) Plaintiff requested and received a hearing before Administrative Law Judge Evangelina P. Hernandez ("the ALJ"). Plaintiff, who was represented by counsel, appeared telephonically for a hearing on December 16, 2014. (AR 53-89.) On February 24, 2015, the ALJ found that Plaintiff was not disabled. (AR 26-42.) The Appeals Council denied Plaintiff's request for review on August 25, 2016. (AR 1-6.)

**A. Hearing Testimony**

Plaintiff appeared telephonically and testified at the December 16, 2014 hearing.

She is 54 and living in a mission in Modesto, California. (AR 55-56.) She can only live in the mission for thirty days unless she receives an extension, but she plans to go to another shelter downtown until April. (AR 56.) The highest level of education that she completed is tenth grade, she does not have her GED, and has not done any vocational schooling. (AR 57.) She has a history of alcohol abuse, but she is not currently using and she last used in 2009. (AR 57-58.) She worked at Del Monte for approximately four to five months doing seasonal work. (AR 59.)

She is currently seeing Cesar Garcia at Corner of Hope for counseling once a month. (AR 59-60.) She is going to be changed to another psychologist,[3] Gina Lima, because Mr. Garcia is moving. (AR 60.) Plaintiff previously saw Ms. Lima two times, but then she requested a change because she did not want to wait two months for an appointment. (AR 60-61.) She sees Dr. Shannon Van Houten for medications at Corner of Hope. (AR 61.) She has been going to Corner of Hope for three years. (AR 61.)

She previously lived in Reno, Nevada for a year and during that time she was receiving

---

[3] The Court notes that Plaintiff testified that Ms. Lima is a psychologist, however, according to the record Ms. Lima is a licensed clinical social worker ("LCSW").

mental health services at Northern Nevada Adult Mental Health Services. (AR 61-62.) She also went to the Hoff Clinic while she was in Reno. (AR 62.) She had a social worker, Iskandar Alexandar, and then she was referred out. (AR 62.) Mr. Alexandar tried to help Plaintiff fill out the Social Security paperwork, but it was not finished. (AR 62.)

Plaintiff cannot work because she gets tired, nervous, and paranoid, she is forgetful, and she cannot be around a lot of people.[4] (AR 63, 82.) She thinks that the paranoia possibly is from her medication and she has told her doctor this. (AR 82.) Her doctor has changed her medication and it has somewhat helped. (AR 82-83.) When she first started taking her medications she had side effects, but now it is under control and she does not have any side effects. (AR 65-66.)

She is bipolar and gets manic episodes two or three days a week that last a couple of minutes. (AR 83.) After one of these episodes she is tired and she does not want to be around people. (AR 83.) When she has these episodes, it takes her about 10 or 15 minutes to get back to what she was doing. (AR 87.)

Plaintiff has been diagnosed with PTSD. (AR 68-69.) She states that she feels like somebody is watching her or talking about her and it stresses her out. (AR 69.) She does not have anxiety attacks, but she does get anxious two to three days a week. (AR 69-70.) It takes her some time to fall asleep, but she has medication that helps her sleep as long as she takes it later in the evening. (AR 70.) She does not lie down during the day. (AR 70.) She has auditory hallucinations of somebody calling her name or saying something to her. (AR 70-71.) She has issues with her memory, such as where she put something. (AR 71.) A couple of times she has not finished what she started. (AR 71.)

She cannot use a stove anymore. (AR 71.) In 1980, she was in a fire when her ex-husband tried to kill her. (AR 71-72.) She had nightmares for a while, but she no longer has nightmares about it. (AR 72.) She has nightmares about her family. (AR 72.) In the last year,

---

[4] She also has physical issues with her lower back, left leg, and vision, and she has diabetes. (AR 63-65.) The Court does not discuss Plaintiff's testimony regarding her physical impairments any further because Plaintiff's appeal is only challenging her mental impairments.

she lost her ex-husband, mother, and brother.  (AR 72.)

She does not like to be around a crowd because she thinks that they want to talk about her or try to see what she has, what she is doing, and where she is from.  (AR 73-74.)  She tries to be okay in a crowd, but if she has to go somewhere, she goes by herself.  (AR 74.)  During the day, she goes to a center that helps people with mental issues because they treat her well and understand her.  (AR 74-75.)  She attends groups at the center where they listen to her.  (AR 78.)  She goes for walks to a park near the mission.  (AR 77.)  She goes to another park for a church service every Sunday.  (AR 77.)

At the mission, she shares a room with two other women.  (AR 79.)  There is a lot of transition at the mission, so she is meeting new people.  (AR 79-80.)  She knows some of the people at the mission, but she does not have any close friends there that she hangs out with.  (AR 81-82.)  For meals, she goes to a communal place with the mission that is right around the corner.  (AR 80.)  She likes to read the Bible, look at magazines, write letters to her son who is in prison, and listen to music on the radio.  (AR 80-81.)  She had a boyfriend in 2011, but they are no longer together.  (AR 81.)

She is able to take care of her personal needs, but she is slow because of the pain and because she is tired.  (AR 75.)  She does not cook because the mission offers her lunch and dinner.  (AR 75.)  She stacks books on a shelf at the mission for an hour every day for work.  (AR 75-76.)  Once in a while, she goes to the store across the street from the mission to buy a soda, chips, hamburger, or something else.  (AR 76.)  She has not driven for ten years.  (AR 76.)

A vocational expert, Thomas Sartoris, also testified at the hearing.  (AR 84-88.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since August 31, 2011, the application date.

- Plaintiff has the following severe impairments: diabetes mellitus, disorder of the back and leg, hypertension, posttraumatic stress disorder, depression, bipolar disorder, and antisocial personality disorder.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally balance; occasionally stoop; occasionally crouch; occasionally kneel; occasionally crawl; work is limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive; work in a low stress job, as defined as having only occasional decision making, only occasional changes in the work setting; and only occasional interaction with the general public.

- Plaintiff has no past relevant work.

- Plaintiff was born on April 23, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, since August 31, 2011, the date the application was filed.

(AR 26-42.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)). However, it is

not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred because 1) the ALJ failed to give legally adequate reasons for rejecting the opinions of Eithne Marie Barton, D.O. ("Dr. Barton"); Khine Phyu, M.D. ("Dr. Phyu"); Iskandar Alexandar, MSW and LCSW ("Mr. Alexandar"); Peggy Kamper, APN ("Ms. Kamper"); and Gina B. Lima, LCSW ("Ms. Lima"); 2) the ALJ improperly relied on the opinion of the state agency psychological medical consultant, Phaedra Caruso-Radin, Psy.D. ("Dr. Caruso-Radin"); and 3) the ALJ's mental RFC finding is based on insubstantial evidence and legal error.[5]  In response, Defendant argues that the ALJ's decision is supported by substantial evidence in the record.

### A.    Opinions by Acceptable Medical Sources

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining

---

[5] Plaintiff also argues that remand for payment of benefits is the appropriate remedy in this case.  However, as the Court affirms the ALJ's decision, the Court does not address the argument regarding remand for payment of benefits.

physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F2d 1403, 1408 (9th Cir. 1989)).

First, Plaintiff makes a general argument about why the ALJ erred in rejecting all of the doctors' opinions that the ALJ rejected. Plaintiff argues that the ALJ separately picked apart each opinion without considering that it was corroborated by other opinions. Here, the ALJ summarized the medical evidence in the record, made interpretations, and then stated her conclusions. (AR 32-40.) The Court determines whether the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Barton and Dr. Phyu and whether the ALJ properly considered the opinion of Dr. Caruso-Radin.

1. Dr. Barton

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Barton, one of Plaintiff's physicians at Health Access Washoe County ("HAWC") in Reno, Nevada, who opined that Plaintiff's impaired mental functioning prevented her from working. Defendant counters that the ALJ properly considered and provided legitimate and specific reasons to reject Dr. Barton's opinion because it was on issues reserved for the Commissioner, did not provide a function by function analysis of Plaintiff's nebulous limitations, was in a check box form, and it was inconsistent with the medical record, including Dr. Barton's own notes.

The ALJ considered that Dr. Barton, a doctor of osteopathic medicine, completed a form titled "Physician's Statement" that is for the Washoe County Department of Social Services where she noted that Plaintiff had a long-term illness and that Plaintiff was unable to work for 12

months or longer due to functional limitations caused by her illness. (AR 36, 343.) The ALJ gave little weight to Dr. Barton's opinion because her opinion consisted largely of checked boxes and vague statements and it did not specify what illness made Plaintiff unable to work. (AR 36.) Additionally, the ALJ found that Dr. Barton's opinion touched upon subject matter reserved for the Commissioner. (AR 36.) The ALJ also found that Dr. Barton failed to provide a function-by-function analysis of Plaintiff's abilities and her opinion was inconsistent with her own treatment notes which reflect that Plaintiff's moods were improved and that her sleep medication was working. (AR 36.)

While the ALJ must consider all medical evidence, "[t]he treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751. However, the ALJ may not simply reject the treating physician's opinion on the ultimate issue of disability. Ghanim v. Colvin, 763 F.3d 1154, 1154 (9th Cir. 2014). To reject the contradicted opinion of the treating physician, the ALJ must provide specific and legitimate reasons that are supported by substantial evidence. Id. Therefore, the fact that Dr. Barton's opinion is on a matter reserved for the Commissioner is in itself not a specific and legitimate reason to reject the opinion. See Ghanim, 763 F.3d at 1161. The Court reviews the other reasons to determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Barton's opinion.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. Plaintiff is correct that the ALJ should determine whether a conclusory or brief opinion is consistent with the physician's treatment notes. See Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014).

Here, the ALJ pointed to treatment notes from Dr. Barton dated September 13, 2011, that indicated that Plaintiff's mood was stable and that she was sleeping well with medications. (AR 36, 395.) On August 30, 2011, Dr. Barton saw Plaintiff and noted that Plaintiff's speech was somewhat pressured, her thought process was tangential, and she had impaired insight, but also that she was not in acute distress and that her mood was stable and there were no overt signs of

depression. (AR 361, 362.) Dr. Barton also noted that Plaintiff had recently restarted Trazodone and that Plaintiff feels she is doing well. (AR 361.) In the report for Plaintiff's final visit with Dr. Barton on October 12, 2011, Dr. Barton noted in the chief complaint related history section that Plaintiff's mood was pretty good.[6] (AR 391.) Dr. Barton stated in the diagnoses section for the October 12, 2011 report that Plaintiff's depression was stable, that she was going to a licensed social worker and Nevada Mental Health and Developmental Services, and that they would await records of labs and progress notes. (AR 392.)

Plaintiff argues that the ALJ did not acknowledge that Dr. Barton reviewed a clinical evaluation performed by Mr. Alexandar. Plaintiff points to page 402 of the administrative record. However, that page does not indicate that Dr. Barton reviewed a clinical evaluation performed by Mr. Alexandar. Plaintiff has not pointed to, and the Court is unable to find anything in the record to indicate that Dr. Barton did in fact review a clinical evaluation performed by Mr. Alexandar.

Plaintiff argues that a few notes indicating that Plaintiff improved somewhat with medication do not show that she can perform sustained work in a competitive environment. However, medical improvement from treatment supports an adverse inference as to the credibility of a claim of ongoing disability. Morgan v. Comm'r of Soc. Sec, 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Impairments that can be adequately controlled with treatment are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff also asserts that the treatment note simply records Plaintiff's report of improved mood and sleep and does not refer to any observations by Dr. Barton. However, Plaintiff's own statements that she has improved mood and sleep are sufficient to support the ALJ's finding.

Although Plaintiff offers a different interpretation of the evidence, where the ALJ's interpretation is rational, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch, 400 F.3d at 679.

---

[6] It appears that Plaintiff indicated to Dr. Barton that her mood is pretty good since this comment is in the chief complaint related history section of the report. (AR 391.)

Therefore, the Court finds that the ALJ provided legitimate and specific reasons supported by substantial evidence in the record to reject Dr. Barton's opinion when she found that Dr. Barton's opinion consisted largely of checked boxes, vague statements, did not specify what illness made Plaintiff unable to work, was not a function-by-function analysis of Plaintiff's abilities, and was inconsistent with Dr. Barton's own treatment notes reflecting that Plaintiff's moods were improved and that her sleep medication was working.[7]

2. Dr. Phyu

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Phyu, another one of Plaintiff's physician at HAWC, who opined that Plaintiff's impaired mental functioning prevented her from working. Defendant counters that the ALJ properly considered and provided legitimate and specific reasons to reject Dr. Phyu's opinion because it was on issues reserved for the Commissioner, does not satisfy the durational requirement for a disability,[8] the record does not support an opinion that Plaintiff had an impairment in reality testing or major limitations in several areas, and Plaintiff's daily activities are inconsistent with an opinion that Plaintiff had an impairment in reality testing or major limitations in several areas.

On September 9, 2011, Dr. Phyu diagnosed Plaintiff with bipolar disorder mixed with severe psychotic features, alcohol dependence in early partial remission, assigned a GAF score of 36,[9] and opined that she was incapable of engaging in competitive work at that time due to her symptoms of mental illness. (AR 36, 397-401.) Dr. Phyu noted that Plaintiff became calmer and more focused once Plaintiff's disability forms were completed. (AR 36, 399.)

A GAF of 31–40 indicates "[s]ome impairment in reality testing or communication (e.g.,

---

[7] Since the ALJ provided specific and legitimate reasons to reject the opinion of Dr. Barton, any error in the other reasons given for discounting Dr. Barton's opinion was harmless. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

[8] The Court does not address this reason asserted by Defendant because the ALJ did not state it as a reason to reject Dr. Phyu's opinion.

[9] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, ED CV 11-440-PLA, 2011 WL 6001698, at *4 n. 6 (C.D. Cal. Nov. 30, 2011) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)).

speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Reynaldo v. Arnold, No. 2:15-CV-2182 KJM DB P, 2017 WL 3981602, at *7 (E.D. Cal. Sept. 11, 2017) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000).

The ALJ rejected Dr. Phyu's opinion for the following reasons:

> Although he did evaluate the claimant, his medical opinion was overly restrictive given the claimant's activities of daily living, which at the time included living with her boyfriend, cooking multi-course meals, completing household chores, taking walks to the park, and playing cards (Exhibits 1D/2, 1E/1/2/4, 6E/5 and 9E/5). Dr. Phyu's opinion touched upon subject matter reserved to the Commissioner without even providing a function-by-function analysis of the claimant's functional abilities. Further, the record suggests that Dr. Phyu's opinion was drafted in an effort to appease the claimant's frustration with the disability application process (Exhibit 12F/22). The undersigned finds that the claimant is not as limited as Dr. Phyu suggests.

(AR 36.)

The fact that Dr. Phyu's opinion is on a matter reserved for the Commissioner is in itself not a specific and legitimate reason to reject the opinion. See Ghanim, 763 F.3d at 1161. Therefore, the Court reviews the other reasons to determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Phyu's opinion.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. Plaintiff is correct that the ALJ should determine whether a conclusory or brief opinion is consistent with the physician's treatment notes. See Burrell, 775 F.3d at 1140; Garrison, 759 F.3d at 1013.

Plaintiff asserts that the ALJ did not acknowledge Dr. Phyu's clinical observations that Plaintiff's mood was anxious, her affect was frustrated and helpless, her process was loose and tangential, and her cognitive functioning, judgment, and insight were impaired. (AR 397, 399.) However, Dr. Phyu noted during that same September 9, 2011 assessment that Plaintiff did not have any hallucinations or delusions present and did not have any suicidal ideation or homicidal ideation present. (AR 398.) Dr. Phyu also found that Plaintiff was oriented to time, place,

1   person, and situation, had no impairment with self-perception, and had an intact memory.  (AR

2   399.)  Dr. Phyu noted that while Plaintiff was initially anxious and displayed significant flight of

3   ideas and disjointed thought processes, by the time they finished she presented as calmer and

4   more focused.  (AR 399.)

5          On August 25, 2011, Dr. Phyu noted in the review of symptoms section that Plaintiff had

6   psychiatric problems; a history of mood disorder; a history of hallucinations, but she no longer

7   has hallucinations; and a history of a suicidal attempt while in jail, but she does not have any

8   suicidal or homicidal ideation at this time.  (AR 404.)  In the objective findings section, Dr. Phyu

9   noted that Plaintiff was alert and "oriented x3," had appropriate affect, and had intact judgment.

10  (AR 405.)

11         Dr. Phyu's September 9, 2011 opinion is conclusory and does not contain any functional

12  limitations or the reason why he believes that Plaintiff is incapable of engaging in competitive

13  employment due to her symptoms of mental illness.  When the Court considers whether Dr.

14  Phyu's opinion is consistent with his treatment notes, the Court finds that the ALJ's finding is

15  supported by substantial evidence and shall not be disturbed.   Although Plaintiff offers a

16  different interpretation of the evidence, where evidence is susceptible to more than one rational

17  interpretation, it is not this Court's function to second guess the ALJ's conclusions and substitute

18  the Court's judgment for the ALJ's.  See Burch, 400 F.3d at 679.  Therefore, the Court finds that

19  Dr. Phyu's opinion not including a function-by-function analysis of Plaintiff's functional abilities

20  is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Phyu's

21  opinion.

22         The ALJ also rejected Dr. Phyu's opinion because it was overly restrictive given

23  Plaintiff's activities of daily living, which included living with her boyfriend, cooking multi-

24  course meals, completing household chores, taking walks to the park, and playing cards.  (AR

25  36.)  Plaintiff asserts that the activities cited by the ALJ, other than Plaintiff living with her

26  boyfriend, were limited and sporadic.  Therefore, Plaintiff, citing Ghanim, 763 F.3d at 1162,

27  argues that the activities did not contradict Dr. Phyu's opinion.  In Ghanim, the Ninth Circuit

28  found that a holistic review of the record did not reveal an inconsistency between the treating

doctors' opinions and the plaintiff's activities. <u>Ghanim</u>, 763 F.3d at 1162. In that case, the plaintiff performed some basic chores and occasionally socialized, but he also relied heavily on his caretaker struggled with social interactions, and was limited to low-stress environments. <u>Id.</u>

However, here, the record reveals an inconsistency between Dr. Phyu's opinion and Plaintiff's activities. In Plaintiff's September 9, 2011 application for supplemental security income she stated that she lived with her boyfriend. (AR 185.) In Plaintiff's September 2011 adult function report, she stated that she lived with her boyfriend in an apartment, she cleaned the apartment as much as she could, she took walks, she cooked small meals and washed laundry when necessary, she prepared completed meals with several courses weekly that take about two-and-a-half hours to prepare, and she cleaned, did laundry, and did ironing every day or every other day for about 5 hours or longer. (AR 201-202, 204.) In Plaintiff's February 5, 2012 adult function report, Plaintiff indicated that she takes walks every day that she does not feel tired or sick and she goes on a regular basis to a community center social group. (AR 243.) In Reynaldo Velasquez's October 21, 2013 third party function report, Mr. Velasquez indicated that Plaintiff goes to a community center and church on a regular basis. (AR 261.) These daily activities are inconsistent with Dr. Phyu's opinion that Plaintiff was not capable of engaging in competitive employment at that time and that she had a GAF of 36. Therefore, the Court finds that the inconsistency between Plaintiff's daily activities and Dr. Phyu's opinion is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Phyu's opinion.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons to reject the opinion of Dr. Phyu that are supported by substantial evidence in the record.[10]

3. <u>Dr. Caruso-Radin</u>

Plaintiff asserts that the ALJ improperly relied on the opinion of Dr. Caruso-Radin, but then also improperly rejected parts of Dr. Caruso-Radin's opinion without giving legally adequate reasons. Defendant counters that the ALJ was entitled to rely upon Dr. Caruso-Radin's

---

[10] Since the ALJ provided specific and legitimate reasons to reject the opinion of Dr. Phyu, any error in discounting Dr. Phyu's opinion because the ALJ believed it was drafted in an effort to appease Plaintiff's frustration with the disability application process and because it was on an issue reserved for the Commissioner was harmless. <u>Valentine</u>, 574 F.3d at 694.

opinion. In her reply, Plaintiff contends that Dr. Caruso-Radin's opinion is an outlier.

Dr. Caruso-Radin opined that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 109-110.) She found that Plaintiff is able to understand, remember, and carry out a two-step command involving simple instructions and maintain concentration, persistence, and pace for such. (AR 109-110.) She also found that although Plaintiff might have difficulty with sustaining attention over extended periods, she could sustain concentration, persistence, and pace up to 4 hour increments with customary work breaks and she is able to complete a usual workday/week. (AR 110.)

Dr. Caruso-Radin opined that Plaintiff is moderately limited in her ability to interact appropriately with the general public and ability to accept instructions and respond appropriately to criticism from supervisors. (AR 110.) She found that Plaintiff would function better in a limited public contact environment. (AR 110.) She opined that Plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting and she found that Plaintiff is able to adapt to simple and routine changes, travel, and respond to hazards. (AR 111.)

The ALJ found that:

> The undersigned assigned great weight to Dr. Caruso-Radin's opinion because Dr. Caruso-Radin conducted a thorough review of [Plaintiff's] records and is familiar with this agency's disability programs and evidentiary requirements. Dr. Caruso-Radin's opinion is also consistent with [Plaintiff's] activities of daily living, which include completing chores at the shelter every morning, stacking books on a shelf, attending church every Sunday, sharing a room with two strangers, and keeping herself busy during the day when she is not allowed to stay at the shelter (Hearing Testimony).

(AR 35.)

Plaintiff contends that the ALJ should have mentioned that the opinion of Dr. Caruso-Radin deserved less weight than Dr. Barton, Dr. Phyu, Mr. Alexandar, Ms. Kamper, and Ms. Lima because Dr. Caruso-Radin never treated or examined Plaintiff. Plaintiff is correct that, as a

general rule, the opinion of a treating physician is entitled to greater weight than the opinion of doctors who do not treat the claimant, and that an examining physician is entitled to greater weight than the opinion of a nonexamining physician. <u>Lester</u>, 81 F.3d at 830. However, a non-examining physician may serve as substantial evidence when the opinion is consistent with independent clinical findings or other evidence in the record. <u>See</u> <u>Thomas</u>, 278 F.3d at 957 (citing <u>Magallanes</u>, 881 F.2d at 751; <u>Morgan</u>, 169 F.3d at 600).

Here, the ALJ evaluated the opinions in the record, both by acceptable medical sources and other sources. As discussed in other sections of this order, the ALJ properly rejected the opinions of Dr. Barton, Dr. Phyu, Mr. Alexandar, Ms. Kamper, and Ms. Lima.

While Plaintiff argues that Dr. Caruso-Radin did not acknowledge significant positive clinical findings by Plaintiff's treating physicians and mental health clinicians, Dr. Caruso-Radin did cite to the October 22, 2013 visit with Ms. Lima. (AR 105, 445-447.) Dr. Caruso-Radin states that she has reviewed the DEA-prepared case summary, medical evidence of record, and accompanying documents. (AR 105.) She states that she will not repeat the details. (AR 105.) Although Dr. Caruso-Radin did not provide a full summary of the medical record as part of her analysis, there is nothing to indicate that she did not review the evidence in the record when she states that she did.

The ALJ found that Dr. Caruso-Radin's opinion is consistent with Plaintiff's daily activities. Plaintiff testified at the hearing that she lives at a mission where she shares a room with two other women. (AR 79.) There is a lot of transition at the mission, so she is meeting new people. (AR 79-80.) She knows some of the people at the mission, but she does not have any close friends that she hangs out with at the mission. (AR 81-82.) For meals, she goes to a communal place with the mission that is right around the corner. (AR 80.) During the day, she goes to a center that helps people with mental issues because they treat her well and understand her. (AR 74-75.) She attends groups at the center where they listen to her. (AR 78.) She also goes for walks to a park near the mission and every Sunday she goes to another park for a church service. (AR 77.) She stacks books on a shelf at the mission for an hour every day for work. (AR 75-76.) Therefore, the Court finds that it was proper for the ALJ to rely on Dr. Caruso-

Radin's opinion because it was consistent with Plaintiff's daily activities. The Court next addresses Plaintiff's argument that the ALJ actually rejected parts of Dr. Caruso-Radin's opinion.

Plaintiff asserts that the ALJ improperly rejected parts of Dr. Caruso-Radin's opinion without giving legally adequate reasons. The Court must determine whether there are limitations that Dr. Caruso-Radin found that are not incorporated into the RFC. The ALJ found that Plaintiff's RFC regarding mental limitations is that "work is limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive; work in a low stress job, as defined as having only occasional decision making, only occasional changes in the work setting; and only occasional interaction with the general public." (AR 32.)

While Plaintiff argues that the residual functional capacity assessment did not contain the limitations opined by Dr. Caruso-Radin, the residual functional capacity findings need not be identical to the relevant limitations but must be consistent with them. Turner v. Comm'r. of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010). An ALJ does not reject a physician's conclusions when the ALJ incorporates the conclusions into the RFC. Id. In Turner, the Ninth Circuit found that the ALJ incorporated a doctor's marked limitations in social functioning by limiting the plaintiff to work with no public contact and where it is recognized that he works best alone. Id.

Plaintiff argues that the ALJ did not account for Dr. Caruso-Radin's opinion that Plaintiff was limited in her ability to accept instructions and respond appropriately to criticism from supervisors. While Dr. Caruso-Radin found that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors in the social interaction limitations section, when Dr. Caruso-Radin was asked to explain in narrative form the social interaction capacities and/or limitations, Dr. Caruso-Radin found that Plaintiff's mental health suggests that Plaintiff would function better in a limited public contact environment.[11] (AR 110.) Each individual rating in the social interaction limitations section is subsumed in the

---

[11] The Court notes that the mental residual function capacity assessment section on the form that Dr. Caruso-Radin filled out indicates that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation.)" (AR 109.)

narrative section for social interaction limitations and Dr. Caruso-Radin indicates what Plaintiff is capable of doing. The ALJ's RFC states that Plaintiff is limited to work where there is occasional interaction with the general public. (AR 32.) Therefore, the ALJ properly considered Dr. Caruso-Radin's finding regarding limited public contact for social interaction limitations and incorporated it into the RFC.

Plaintiff also argues that the ALJ did not account for Dr. Caruso-Radin's opinion that Plaintiff was limited in her ability to complete a normal workday or workweek, perform at a consistent pace, and maintain attention and concentration for extended periods. However, considering these limitations, Dr. Caruso-Radin found in the narrative form section for sustained concentration and persistence capabilities and/or limitations that Plaintiff could understand, remember, and carry out a two-step command involving simple instructions, and would be able to maintain concentration, persistence, and pace for such. (AR 110.) She also found in this narrative form section that although Plaintiff might have difficulty sustaining attention over extended periods, Plaintiff could sustain concentration, persistence, and pace for up to 4 hour increments with customary work breaks and she would be able to complete a usual workday/workweek. (AR 110.) The RFC formulated by the ALJ limited Plaintiff to simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive. (AR 32.) Therefore, the ALJ's determination that Plaintiff is limited to "simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive" adequately encompassed Dr. Caruso-Radin's opinions regarding Plaintiff's mental limitations in the sustained concentration and persistence section of Dr. Caruso-Radin's mental residual functional capacity assessment. Thus, the Court finds that the ALJ did not reject the findings of Dr. Caruso-Radin when determining the RFC. Accordingly, the ALJ did not err in weighing the opinions of Dr. Caruso-Radin.

### B. Opinions of "Other Sources"

Plaintiff also challenges the ALJ's evaluation of the opinions of Mr. Alexandar, Ms. Kamper, and Ms. Lima who are "other sources." In Plaintiff's reply brief, she argues that the opinions of Plaintiff's therapists are medical opinions. However, the Court notes that Social Security Ruling 06-03p states that only "acceptable medical sources" can give medical opinions.

See 20 CFR § 416.927(a)(1).

Under the Social Security regulations, 'licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). A nurse is considered an other medical source and is not entitled to the same deference as acceptable medical sources. Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015); Molina, 674 F.3d at 1111. Social workers are also not "acceptable medical sources" under the regulations. 20 C.F.R. § 404.1513(a), (d). The ALJ only needs to provide reasons germane to the witness to discount testimony from these other sources. Molina, 674 F.3d at 111; Turner, 613 F.3d at 1224 (citation omitted).

Plaintiff asserts that the ALJ was obliged to consider the factors set forth in SSR 06-03p for the opinions of Mr. Alexandar, Ms. Kamper, and Ms. Lima. SSR 06-03p states that "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. Further, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or a subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

The Court next determines whether the ALJ provided a germane reason supported by substantial evidence for rejecting the opinions of Mr. Alexandar, Ms. Kamper, and Ms. Lima.

1. Iskandar Alexandar, LCSW and MSW

Plaintiff argues that the ALJ improperly rejected Mr. Alexandar's opinions and GAF scores that he gave on August 26, 2011, November 2, 2011, and February 2, 2012.[12]

---

[12] Plaintiff states that she is foregoing any discussion of the ALJ's discussion of Mr. Alexandar's third party reports. She states that "[b]ecause the reasons given by the ALJ for rejecting [Mr.] Alexandar's clinical opinions are legally inadequate, the reasons given by the ALJ for rejecting [Mr.] Alexandar's third party reports are moot. (ECF No. 14 at 13.) The Court finds that Plaintiff has waived any argument that the ALJ erred in rejecting Mr. Alexandar's third party reports. However, even if Plaintiff did adequately challenge the ALJ's rejection of Mr. Alexandar's third party reports, the Court finds that the ALJ gave germane reasons supported by substantial evidence for rejecting Mr. Alexandar's third party reports. Among several reasons provided by the ALJ, the ALJ found that Mr. Alexandar's allegation that Plaintiff was unable to prepare her own meals was over restrictive in light of Plaintiff's report that she could prepare multi-course meals. (AR 37, 202, 204, 534.) The ALJ also found that Mr. Alexandar's statement that

19

Plaintiff asserts that the most probative opinions in this matter are those of Mr. Alexandar. The ALJ gave little weight to the opinions and Global Assessment of Function ("GAF") Scores of Mr. Alexandar. (AR 36, 37.) The ALJ found:

> The undersigned assigns little weight to these GAF scores and opinions because a social worker is not an acceptable medical source. Further, this social worker's opinions are not detailed and touch upon subject matter reserved to the Commissioner. Iskandar Alexandar's overly restrictive GAF scores are not consistent with the claimant's activities of daily living, which include taking walks to the park, attending weekly church services and being able to live in a shelter with people the claimant does not know very well (Hearing Testimony). Moreover, in treatment notes, the social worker has noted that the claimant has been appropriately dressed with adequate grooming (Exhibit 22F/2). Moreover, the claimant was cooperative and made good eye contact (Exhibit 22F/2).

(AR 36.)

Plaintiff is correct that an ALJ cannot reject Mr. Alexandar's opinions solely because he was not an acceptable medical source or solely because the opinions touched on subject matter reserved to the Commissioner. See SSR 06-03p. Nevertheless, to the extent that the ALJ erred, that error was harmless because the ALJ gave a germane reason for rejecting Mr. Alexandar's opinions.

The ALJ properly rejected Mr. Alexandar's opinions because his GAF scores were overly restrictive based on Plaintiff's daily activities. Mr. Alexandar found that Plaintiff had a GAF score of 39 on August 26, 2011, a GAF score of 38 on November 2, 2011, a GAF score of 37 on January 20, 2012, and a GAF score of 36 on February 2, 2012. (AR 35, 383, 389, 518, 530.) As discussed above, a GAF of 31–40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" Reynaldo, 2017 WL 3981602, at *7 (quoting DSM–IV, at 32).

---

Plaintiff could only pay attention for 20 seconds and then a later statement that Plaintiff could only pay attention for 5 minutes were both overly restrictive and inconsistent with the evidence as a whole, and inconsistent with the ALJ's observation that Plaintiff had no problems concentrating and paying attention during the hearing that lasted almost an hour. (AR 537, 545.) Therefore, the ALJ provided germane reasons for rejecting Mr. Alexandar's third party function reports.

Plaintiff testified at the hearing that during the day she goes to a center that helps people with mental issues for counseling because they treat her well and understand her. (AR 74-75.) She attends groups at the center where they listen to her. (AR 78.) She lives at a mission where she shares a room with two other women. (AR 79.) There is a lot of transition at the mission, so she is meeting new people. (AR 79-80.) She knows some of the people at the mission, but she does not have any close friends that she hangs out with at the mission. (AR 81-82.) For meals, she goes to a communal place with the mission that is right around the corner. (AR 80.) She goes for walks to a park near the mission. (AR 77.) She goes to another park for a church service every Sunday. (AR 77.)

Therefore, the Court finds that Plaintiff's activities of daily living, including taking walks to the park, attending weekly church services, and being able to live in a shelter with people that Plaintiff does not know very well are inconsistent with a GAF between 36 and 39. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679. The ALJ did not improperly assess Mr. Alexandar's opinion evidence. She considered it and weighed it in light of the other evidence in the record. Thus, the Court finds that the ALJ properly provided a germane reason for rejecting Mr. Alexandar's opinions.

### 2. Peggy Kamper, APN

Plaintiff asserts that the ALJ improperly rejected the opinion of Ms. Kamper, who evaluated Plaintiff and assigned Plaintiff a GAF score of 41 on September 12, 2011. While the ALJ assigned little weight to the GAF score opined by Ms. Kamper because "Ms. Kamper is not an acceptable medical source and she did not provide a function-by-function analysis," (AR 37), the ALJ also provided two other reasons which are germane reasons for rejecting the GAF score opined by Ms. Kamper.

The ALJ rejected Ms. Kamper's opinion because her treatment notes were inconsistent with the low GAF score. Plaintiff asserts that Ms. Kamper's opinion was supported by her observations that Plaintiff's mood was tearful at times, her affect was blunted, she was a bit irritable, her thought processing was concrete and impoverished, she did not give explanations,

and she was paranoid. The ALJ stated that "[d]espite Ms. Kamper's assigned low GAF score, treatment notes describe [Plaintiff] as clam and cooperative (Exhibit 7F/3). Moreover, Ms. Kamper stated in treatment notes that [Plaintiff's] memory, attention and concentration were intact (Exhibit 7F/3)." (AR 37.) "A GAF score in the range of 41–50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (*e.g.*, unable to keep a job)." Cornelison, 2011 WL 6001698, at *4, n. 7 (citing DSM–IV, at 32).

On September 12, 2011, Ms. Kamper noted that Plaintiff was calm and cooperative. (AR 347.) Ms. Kamper also found that Plaintiff's memory was intact with a score of 26/30 on a mini mental status examination, and found that Plaintiff's attention and concentration were intact. (AR 347.) Ms. Kamper noted that while Plaintiff complained of problems with distraction, she is able to focus when needed. (AR 347.) Plaintiff was tearful at times and had a blunted affect. (AR 347.) However, Ms. Kamper does not indicate that Plaintiff's judgment, insight, and impulse control are impaired. (AR 347.) Plaintiff was alert and "oriented x 3." (AR 347.) While Plaintiff's thought processing was concrete at times and impoverished, she was not tangential or circumstantial, there was no flight of ideas or loose associations, and there was no thought blocking. (AR 347.) She was unable to state symptoms, but when she was asked specific symptoms, she answers whether she has it. (AR 347.) She circled yes for "every other symptom" on the mood disorder questionnaire, but she was unable to elaborate on the symptoms and became irritable when asked about one symptom. (AR 347.) Ms. Kamper noted that it was hard to get information from Plaintiff unless it is something she wants. (AR 347.) Therefore, the Court finds that the ALJ gave a germane reason when she found that Ms. Kamper's treatment notes describing Plaintiff as calm and cooperative and with intact memory, attention, and concentration were inconsistent with the low GAF score that she assigned.

The ALJ also found that the "GAF score [assessed by Ms. Kamper] does not accurately reflect [Plaintiff's] overall level of functioning or daily activities, which include volunteer work, completing chores every morning, living with strangers and keeping busy during the day when she is not allowed to be at the shelter (Hearing Testimony)." (AR 37.) At the hearing, Plaintiff testified that she lives at a shelter where she shares a room with two other women and she is

1  meeting new people at the shelter because there is a lot of transition there. (AR 79-80.) She also

2  testified that during the day she goes to a center that helps people with mental issues because

3  they treat her well and understand her, and she does group counseling there. (AR 74-75, 78.)

4  She also goes for walks to a park near the mission and she goes to another park for a church

5  service every Sunday. (AR 77.) She stacks books on a shelf at the mission for an hour every day

6  for work. (AR 75-76.) Therefore, the Court finds that the ALJ gave a germane reason when she

7  found that the GAF score of 41 does not accurately reflect Plaintiff's daily activities.

8  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

9  conclusion that must be upheld." Burch, 400 F.3d at 679. Thus, the Court finds that the ALJ

10  properly provided germane reasons to reject the opinion of Ms. Kamper.

11      3.    Gina Lima, LCSW

12      Plaintiff argues that the ALJ improperly rejected the opinion of Ms. Lima, who opined on

13  October 23, 2013, that Plaintiff's ability in a number of functional areas was poor and ability in

14  several other functional areas was fair. (AR 38, 507-508.)

15      The ALJ gave little weight to Ms. Lima's October 23, 2013 opinion.[13] (AR 38.) The

16  form defines fair as the ability to function in this area is seriously limited but not precluded. (AR

17  507.) Poor is defined as no useful ability to function in this area. (AR 507.) Ms. Lima opined

18  that Plaintiff would have a fair ability to follow work rules, function independently, behave in an

19  emotionally stable manner, and relate predictably in social situations. (AR 507-508.) She

20  opined that Plaintiff would have a poor ability to relate to coworkers, deal with the public, use

21  judgment, interact with supervisors, deal with work stress, maintain attention/concentration,

22  understand, remember, and carry out complex, detailed but not complex, and even simple job

23  instructions, maintain personal appearance, and demonstrate reliability. (AR 507-508.) She

24  also opined that Plaintiff would require at least a 15 minute break every hour. (AR 507.)

25

26  [13] The ALJ considered that Ms. Lima diagnosed Plaintiff with posttraumatic stress disorder symptoms; anxiety;
major depression; and assessed Plaintiff with a Global Assessment of Function ("GAF") Score of 60. (AR 38, 446,
27  506.) "A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social,
occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL
6001698, at 4 n.6 (citing DSM–IV, at 34). The ALJ gave substantial weight to Ms. Lima's GAF score of 60. (AR
28  38.)

Although the ALJ rejected Ms. Lima's opinion because she is not an acceptable medical source, she also rejected the opinion because Ms. Lima's overly restrictive findings were based primarily on Plaintiff's subjective complaints gathered during a 20-30 minute meeting with Plaintiff. (AR 38.)[14] Plaintiff argues that this is an improper reason because it is contradicted by Ms. Lima's examination notes. Plaintiff asserts that the ALJ did not acknowledge that Ms. Lima observed on October 22, 2013, that Plaintiff's affect was flat, her mood was depressed, intellect was below average, attention was distracted, reasoning was poor, impulse control was poor, and judgment and insight were poor. (AR 446.)

However, Ms. Lima's examination notes do not contradict this reason provided by the ALJ. Ms. Lima also found that Plaintiff's appearance was appropriate, she was oriented to person, place, time, and situation, she had unremarkable behavior and psychomotor behaviors, she had appropriate speech, her memory was intact, she had clear consciousness for sensorium, she was cooperative, her self-perception was realistic, her thought processes were logical and her thought content was unremarkable, she did not express suicidal or homicidal ideation, and she was able to understand and agreed to refrain from harmful action. (AR 446.)

Plaintiff complained of forgetfulness, anxiety, depressed mood, nightmares, negative thoughts, poor sleep, sadness, no motivation/interest, and a history of suicidal ideation during the October 22, 2013 visit. (AR 445.) Plaintiff told Ms. Lima that she was homeless at the time. (AR 445.)

While Plaintiff told Ms. Lima that she was forgetful, Ms. Lima noted in the examination that Plaintiff's memory was intact. (AR 445-446.) However, Ms. Lima opined that Plaintiff had poor ability to understand, remember and carry out complex, detailed but not complex, and even simple job instructions. (AR 508.) While Plaintiff stated that she was homeless, Ms. Lima noted that Plaintiff had an appropriate appearance, which contradicts Ms. Lima's opinion that Plaintiff's ability to maintain her personal appearance is poor. (AR 445-446, 508.) Therefore, the Court finds that the ALJ gave a germane reason for rejecting Ms. Lima's opinion when he

---

[14] The ALJ noted that Ms. Lima evaluated Plaintiff for the first time on October 22, 2013. (AR 38.)

1  found that Ms. Lima's overly restrictive findings were based primarily on Plaintiff's subjective

2  complaints gathered during a 20-30 minute meeting with Plaintiff.

3      The ALJ also found that Ms. Lima's findings are not consistent with the opinion of Dr.

4  Caruso-Radin, who the ALJ assigned greater weight. (AR 38-39.) As discussed above, the ALJ

5  properly relied on the opinion of Dr. Caruso-Radin. Therefore, the Court finds that this was a

6  germane reason for rejecting Ms. Lima's opinion.

7      In addition, the ALJ found that Ms. Lima's findings are not consistent with Plaintiff's

8  ability to complete chores at the mission and ability to live amongst women she does not know

9  well. (AR 39.) Plaintiff contends that the limited activities cited by the ALJ do not contradict

10 Ms. Lima's opinion of Plaintiff's mental functioning. Plaintiff asserts that she only did one hour

11 of stacking books a day at the mission, that she did not hang out with the other women who lived

12 at the mission, and that her interactions with the other mission occupants was minimal. Plaintiff

13 testified that she lives at a mission where she shares a room with two other women. (AR 79.)

14 There is a lot of transition at the mission, so she is meeting new people. (AR 79-80.) She knows

15 some of the people at the mission, but she does not have any close friends that she hangs out with

16 at the mission. (AR 81-82.) For meals, she goes to a communal place with the mission that is

17 right around the corner. (AR 80.) These activities are inconsistent with Ms. Lima's findings,

18 and specifically, the findings that Plaintiff would have a poor ability to relate to coworkers, deal

19 with public, interact with supervisors, and deal with work stress, and fair ability to behave in an

20 emotionally stable manner and relate predictably in social situations. Therefore, the Court finds

21 that this was a germane reason for rejecting Ms. Lima's opinion.

22     Thus, the Court finds that the ALJ properly provided germane reasons for rejecting Ms.

23 Lima's opinion.

24 **C.    The Residual Functional Capacity Findings are Supported by Substantial
             Evidence in the Record**

25

26     Plaintiff argues that the ALJ's errors in addressing the medical evidence cause the RFC to

27 be without substantial support in the record. A claimant's RFC is "the most [the claimant] can

28 still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the

relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

Here, the ALJ found that the RFC is "supported by the medical evidence of record, hearing testimony and partially by the opinions of the State agency medical consultants." (AR 40.) As discussed above, the ALJ did not err in rejecting the opinions of Dr. Barton, Dr. Phyu, Mr. Alexandar, Ms. Kamper, and Ms. Lima. The ALJ properly relied on the opinion of Dr. Caruso-Radin, and the ALJ did not improperly reject part of Dr. Caruso-Radin's opinion. The ALJ summarized the hearing testimony and medical evidence of record in her decision and also discussed them when she was analyzing the opinions provided by the acceptable medical sources and other sources. The part of the hearing testimony that the ALJ relied on for rejecting multiple opinions and supporting her reliance on Dr. Caruso-Radin's opinion was Plaintiff's testimony regarding her daily activities. While Plaintiff may disagree with the ALJ's interpretation of the evidence in the record, the ALJ properly considered the medical evidence and other evidence in the record and there is substantial evidence in the record to support the RFC.

Therefore, the Court finds that the ALJ did not err in formulating the RFC.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting the opinions of Dr. Barton, Dr. Phyu, Mr. Alexandar, Ms. Kamper, and Ms. Lima, in relying on the opinion of Dr. Caruso-Radin, and in formulating the RFC.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Sylvia Kate Lyon.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **December 5, 2017**

UNITED STATES MAGISTRATE JUDGE